## WARD et v CAMPBELL et

Common Pleas Court, Cuyahoga Co

Decided January 12, 1939

Philip Schoenberg, Cleveland, Roland Reichert, Cleveland, for plaintiffs.

Payer, Corrigan & Cook, Cleveland, H. T. Gates, Cleveland, Laylin & Smith, Cleveland, for defendants.

## OPINION

By HURD, J.

This case comes before this court

upon the issues made up by the amended petition of the plaintiffs, and the answer and cross-petition of the defendants.

The plaintiffs are Courtney D. Ward, David C. Rothstein, Max J. Goldlust and Harry Offner who claim to be officers and delegates of District Council No. 6 of Cuyahoga County, Cleveland of the brotherhood of painters, decorators and paperhangers of America, an unincorporated association and separate entity, chartered by said brotherhood as a subordinated central or representative body thereof authorized to organize and carry on the activities of such body within the territory comprising the city of Cleveland, Ohio, and other surrounding territory.

The defendants are Donald A. Campbell, Lawrence A. Zitt, Roy Metzgar, William Schultz and others who likewise claim to be officers and delegates of District Council No. 6. Additional defendants are the Brotherhood of Painters, Decorators and Paperhangers of America and the respective officers thereof, together with certain banks and trust companies and others too numerous to mention in this brief memorandum.

The plaintiffs pray in substance, that the defendants and all other persons acting with them be immediately enjoined and restrained from carrying on, conducting or administering the business affairs and activities of Council No. 6 at 1280 West 3rd street or at any other place, and from performing or attempting to perform the duties and functions of the duly qualified, elected and acting officers, business agents or day secretary of said Council No. 6.

The defendants in their amended answer and cross-petition, in addition to a number of defenses therein set forth, make certain admissions and denials and pray that the plaintiffs be enjoined from holding themselves out to be officers of the district council or that the address of 2030 Euclid avenue is the office of said district council, maintaining that they, the defendants, are the duly authorized officers of said district council and that they have established the local headquarters thereof at 1280 West 3rd street.

Extended hearings have been had,— the court has heard the testimony of plaintiffs and defendants at considerable length and is now called upon to determine in substance whether or not the plaintiffs or the defendants are the duly constituted officers of Local No. 6, and ancillary to this proposition, to determine which location or office is the local headquarters of the district council.

During the course of the final arguments, it was admitted by counsel for the plaintiffs in open court that the persons elected by the district council at their meeting July 14, 1938 were elected according to the laws of the district council and therefore were at that time the duly constituted officers of the district council. As this admission coincides with the claims of the defendants, we find the parties in accord upon this question but it is claimed by the plaintiffs that one Arthur Oster, who was elected vice president as of that date, was later disqualified by reason of his withdrawal as a delegate by his own union.

We find the fact to be, however, that on appeal said Arthur Oster was reinstated, and we believe properly so, as vice president of the district council. This is important because the president, Don Campbell, who was nominated and elected, is unable to serve by reason of imprisonment due to a conviction in the criminal branch of this court.

It was also claimed by the plaintiffs that one John H. Potter had resigned his position as secretary at the time he attempted to act in that capacity on October 6, 1938, but we find this claim without merit. The most that could be said for a written statement in the evidence, is that he refused to conduct a meeting which he claimed was not in conformity with the laws of the organization, and that his action was under instructions from his superior officers of the International Brotherhood. In any event we must conclude that Arthur Oster is the duly constituted vice president of the council with authority to act in the absence and disability of the

president and that John H. Potter is the duly constituted secretary.

We find also that the trustees and other officers elected at that time are the lawfully constituted officers of the organization with the possible exception of Donald A. Campbell, who has been unable to serve in that capacity due to the disability hereinbefore mentioned. Because of lack of evidence as to legislation declaring his office vacant at a legally conducted meeting of the organization and because of lack of evidence as to a legal successor, we do not attempt at this time to pass upon that point. There may have been one or more bona fide resignations of some of these officers in which case their lawfully elected successors would be the properly constituted officers of the brotherhood at this time.

However, the important question involved in this case relates to the tenure of the business agents of the association and to the day secretary of the district council, whose terms were attempted to be extended and whose salaries were attempted to be increased by action of the council by way of referenda occurring on March 6. 1937 and on March 13, 1937, respectively. The referendum conducted on March 6, 1937 had to do with the repeal of Section 29 of the district council by-laws concerning the manner and method of submitting amendments. The pertinent part of said amendment, which by the action of the membership was repealed by a vote of 1181 for the repeal to 311 against the repeal,—a majority only being required to carry,—is as follows:

"Section 29. All amendments to these by-laws must be sent in writing with the seal attached by the recording secretary of the local union requesting the change or addition. They must be at the district council by the third meeting of January. They must be read at the next two regular consecutive meetings before being voted on in the council. They shall be referred to the local unions for referendum not later than the third meeting in February of each year. Returns on all amendments must be back

in the district council not later than the first meeting in April"

The other action complained of and which the plaintiffs claim was illegal, was a referendum held on March 13, 1937. The question presented to the membership, "Shall Section 19, paragraph 1 and Section 23, paragraph 8, be amended so as to extend the term of business agents and day secretary designated in said section from one to two years, and this extension then apply to the term of the present incumbents?" And on the ballot submitted to the membership the statement was made,—"this automatically extends such election for said officers until June, 1939". This proposal carried by a vote of 902 in the affirmative as against 440 in the negative,—a majority only being required to carry. After said legislation attempted by referenda was effected, the same was filed with the general secretary treasurer for submission to the general executive board for approval, and thereafter, in accordance with Sections 224 and 225, said legislation so conducted by referenda was approved by the general executive board of the brotherhood.

It is the claim of the plaintiffs that these elections submitting the referenda were not in conformity with Sections 224 and 225 of the constitution of the brotherhood of painters, decorators and paperhangers of America, which read as follows:

"Section 224. By-laws for the government of district councils must be submitted by the district council to the local unions represented in said district council and to become law must receive a majority of the votes of the members present and voting. Two copies of the same shall be filed with the G. S-T for submission to the general executive board, one to be returned as approved or corrected, the other to be filed at the general office for reference.

"Section 225. All changes in the by-laws, working rules or capitation tax of district councils must be submitted to the referendum and to become law must receive a majority of the votes of the

members present and voting in the affiliated locals and must be submitted to the general executive board for approval, in duplicate, as provided in Section 224."

It is claimed that the action was violative of these sections primarily because the elections did not take place in the local council rooms of the various locals comprising district council No. 6. The court finds that the elections were held at the headquarters of district council No. 6, that the officers of the respective local unions came to the general meeting room and headquarters above referred to and stationed themselves in certain designated places in the hall; that when the members of the respective locals came to vote they applied to the officer of their local union, who was there in charge of the membership lists and asked for their ballots. In order to secure a ballot it was necessary that the person be properly identified as a member, be certified that he was entitled to vote by the proper officer of the local, and when this formality was completed, the member then marked his ballot and deposited the same in a ballot box stationed there for that purpose. The evidence also clearly shows, that at all meetings of the locals, any action of the district council concerning any of these matters was reported back to the local unions by their respective delegates, so that in this way each one of the local unions were informed of the discussion had of the various subjects involved and the progress of events. There has been no claim made that the votes were not properly counted at this meeting or that any person was denied the right to vote. All members had notice of the time and place of the voting. The only irregularity which appeared in the evidence concerning this was the testimony to the effect that when watchers for No. 867 and No. 128 appeared at district council headquarters, they were told by Mr. Campbell that this was a district council election and that they could not function as watchers. One of the watchers was plaintiff Ward who did not vote at this election.

There was nothing in the evidence to show that the plaintiff Ward and the other watcher were prevented from remaining in the hall to watch the vote if they desired to do so. They simply left the place on the word of Campbell which they were not required to do. Certainly this incident is not sufficient to invalidate the referenda which were legal in all other respects. In other words, the voting was conducted in such a manner as to register the will of all of those members who desired to vote. The result of the vote was decisively in favor of the repeal of Section 29 and in favor of the extension of the terms of the business agents and the day secretary.

The court finds from all the evidence that no complaint was made by any of the local unions participating in the election to the general executive board or to the general assembly of the brotherhood, nor was any complaint or appeal made by the members, who are plaintiffs herein, to the general executive board or to the general assembly of the brotherhood as required by the constitution and by-laws of the brotherhood.

Therefore, we reach the conclusion that the plaintiffs, not having exhausted their remedies within their own association, have not the right of action on their petition.

It is a well settled principle of law, recognized by the courts of this state and by the courts of other states, that the members of an organization or association must first exhaust all remedies within the association, and before its regularly constituted tribunals, before appealing to the courts. While there are numerous authorities for this proposition, the case of **International Union of Steam and Operating Engineers et v Owens, 119 Oh St 94,** is sufficient authority for this proposition. If this were the only question involved in this case, we should have granted the motion of the defendants at the conclusion of plaintiff's case to dismiss the petition on this ground alone, but, inasmuch as the defendants

are praying for judgment on their cross-petition, it becomes necessary that the court determine the issues here involved on the merits of the case based on all the evidence.

Proceeding to a consideration of the case on the merits, we are convinced that the voting of March 6th and 13th respectively by way of referenda was substantially in accord with Sections 224 and 225 of the constitution of the international brotherhood. It is true that the place of the election was not in the local halls of the local councils, however, the evidence shows that council No. 867 used this same meeting hall for its meetings and that the election was conducted in precisely the same manner as it would have been conducted in the meeting halls of any of the locals comprising the district councils. The proper officers of the locals were present and certified to the qualifications of the members, and the ballot was secret,—open to all members,—and all the members had notice of the time and place of the election.

A fair interpretation of Sections 224 and 225 required that all changes be submitted to a referendum of the affiliated locals. In our opinion the proper procedure was followed in substance in this respect, and therefore we consider the place merely an incident and not of any great importance so long as the results reflected the will of the members at that time, a point on which we have no doubt although we believe a similar referendum today might have a different result. No fraud was shown with respect to the matter of the counting of the votes or of the recording of the votes; in the meantime, all members of the locals in their own local meetings, as before stated, had notice of the proposed legislation as early as December of the preceding year and January of the year in which the election was held.

We find further, that no action was taken to protest this election, as hereinbefore stated, and no action was taken by way of appeal to the courts until October 25, 1938, a period of approximately a year and six months after the events now complained of took place.

The conclusion is that there was substantial compliance with Sections 224 and 225 in the conduct of the referenda, and that the plaintiffs generally acquiesced in the results by their course of conduct over a period of time. Consequently, we reach the conclusion that the referenda were effective in accomplishing the purpose desired and were in compliance with the laws of the organization.

We find also from the evidence that at a meeting of the district council, which was scheduled to occur on the 6th of October at district council headquarters at 2030 Euclid avenue, that the vice president, Arthur Oster, attempted to conduct a meeting of the council but that he was prevented from doing so by the acts of certain delegates and non-delegates, who were present at that time and place, and who by obstructive tactics prevented the meeting being properly called to order and business being properly conducted.

We find from the evidence that thereafter a meeting was conducted by the plaintiff Ward and that sometime after the conclusion of this meeting, the office of the day secretary was invaded and that the plaintiff Ward and others, either on that night or certainly on the following morning, forcibly took possession of the office and the effects of the day secretary. It is our conclusion that this action by the plaintiff Ward and others was without any warrant or authority in the laws either of the brotherhood, the district council or the laws of the state. It appears to us that the plaintiff Ward and others assisting him attempted to take the law into their own hands by taking possession of the property and the effects of the district council. This court of equity can not by its decision in this case approve such action nor can it condone such tactics in any case. If the plaintiffs felt themselves aggrieved, they should have proceeded in accordance with the laws of their organization and exhausted their remedies within the organization, and, failing to secure relief in this respect, should then have appealed to the courts; but they should not have by force, or otherwise, at-

tempted to take physical possession of the property and effects of the organization until lawfully authorized so to do either by their own organization or by the courts.

It appears that after certain of the plaintiffs took possession of the headquarters at 2030 Euclid avenue, on the advice of counsel, the day secretary and business agents and other officers, desiring to avoid the results of physical encounters and the use of force, and being unable to secure the aid of the police to have their property restored to them, established their headquarters at 1280 West 3rd street by and with the approval of the officers of the international brotherhood.

This case was presented throughout and argued by very able counsel on both sides. Counsel for the plaintiffs asserted in his concluding argument that the organization is for the benefit of the individual members and not for the benefit of the officers. We are in complete accord with the sentiments expressed in this statement, but, in this connection, we wish to point out that the officers who are now acting are doing so under the will of the membership as evidenced not by a small majority but a substantial majority of the membership at the time the votes were taken by referenda hereinbefore referred to.

We are very free to say that we have serious doubts as to the wisdom of the particular legislation at the time and place that it was effected, but it is not the province of this court to pass upon the wisdom of the conduct of the members in adopting any legislation which is not contrary to their own laws and the laws of the state. The members acted, in extending the terms of the business agents and increasing their salaries by secret ballot, freely and unrestrained, and no complaint was ever made by the locals as a body, and no formal complaint was ever made by these plaintiffs until such time as they filed their petition in court without first exhausting their remedies within their own organization.

At the outset of this hearing, finding that all of the matters herein com-

plained of could be cleared up by an election in June of 1939, the court urged upon respective counsel of the parties that some adjustment be made of the difficulties until such time as such election could be held, but the urgings of the court were unavailing in accomplishing an amicable adjustment of this controversy. We have examined very carefully all the evidence presented, and we find that the plaintiffs are not entitled to relief on the grounds hereinbefore set forth.

In conclusion, we find, under the evidence and the application of the law to the evidence, that the petition of the plaintiffs must be dismissed and defendants granted judgment on their cross-petition.

A decree will therefore be entered for the defendants on their cross petition as prayed for, finding that the district council headquarters now are located at 1280 West 3rd street, that the respective business agents who were elected in 1937 are the duly constituted business agents, that defendant Lawrence A. Zitt is the duly constituted day secretary, and that the officers elected in the July meeting of 1938 are still the officers of the organization, except where their positions have been vacated by resignation or disability as hereinbefore set forth.